IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| **GLORIA COOKE**<br>Cascade Lane<br>Largo, MD 20774<br><br>*on behalf of herself and*<br>*all others similarly situated*<br><br>Plaintiffs,<br><br>v.<br><br>**SHAPIRO & BROWN**<br>Serve: Corporation Trust Inc.<br>    2405 York Rd, Ste 201<br>    Lutherville, MD 21093<br><br>Defendant,<br><br>**BANK OF AMERICA**<br>Serve: Corporation Trust Inc.<br>    2405 York Rd, Ste 201<br>    Lutherville, MD 21093<br><br>Defendant. | Civil Action No. CAC19-40218 |

## CLASS ACTION COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Gloria Cooke, by and through undersigned counsel, on behalf of herself and all other similarly situated, brings this complaint against defendants Shapiro & Brown ("S&B") and Bank of America ("BOA"), and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"); Maryland Consumer Debt Collection Act, Md. Code §14-201 et seq. ("MCDCA") and Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 *et seq*. ("MCPA").

1

## PARTIES

2. Plaintiff is a natural person who resides in the state of Maryland.

3. Defendant S&B is a law firm that specializes in the collection of debts for mortgage servicers and/or lenders by filing foreclosure actions against mortgagors.

4. Defendant BOA is a national bank that, among other things, originates, services and purchases mortgage loans.

## FACTUAL ALLEGATIONS

5. In May 2003, Plaintiff obtained an FHA insured mortgage loan from Countrywide Home Loans, Inc to refinance her personal residence at 10201 Cascade Lane, Largo, MD (the "Property"). Defendant BOA claims to have acquired the ownership and servicing of the loan.

6. Defendant BOA falsely claimed that it had right to collect payments on the loan. BOA's claim was false because it did not qualify as the Noteholder under the terms of the Promissory Note nor as a "holder" under applicable Maryland law. BOA did not qualify as the Noteholder or "holder" because it was not in possession of the original note and the original note had never been endorsed to it by an authorized person.

7. In 2014, BOA falsely claimed that Plaintiff was in default. BOA's claim was false because it was not the Noteholder or "holder" and therefore, BOA had no right to declare the loan in default.

8. In October 2014, BOA offered the Plaintiff a loan modification. Based on Plaintiff's communications with BOA, Plaintiff believed that BOA's offer to modify the loan would extend her loan an additional 26 years. BOA did not attempt to hold an FHA complaint face-to-face meeting with Plaintiff regarding the loan modification or any other loss mitigation option. Because Plaintiff understood the loan modification offer would extend her loan by 26 years, and Plaintiff did not want to extend her loan by 26 years, the Plaintiff did not accept the loan modification offer.

2

9.  In March 2016, Defendant S&B filed a foreclosure action against Plaintiff and her Property. Upon information and belief, Defendant S&B was retained by Defendant BOA to foreclose on Plaintiff's Property.

10. Prior to filing the foreclosure action, the Defendant BOA did not attempt or did not make adequate attempts to hold a face-to-face meeting with Plaintiff that would have provided Plaintiff with an opportunity to make modifications to the loan and avoid foreclosure.

11. On March 21, 2017, S&B sent Plaintiff a letter with the title NOTICE TO OCCUPANTS OF PENDING ACQUISITION. This notice claimed that "the mortgage for the property in which you are living is in foreclosure as a result of the property owner's default" and that "within the next 60 to 90 days, title to the property is expected to be transferred to the Secretary of Housing and Urban Development (HUD)." The notice further announced that "HUD generally requires that there be no one living in properties conveyed to the Secretary as a result of a foreclosure" and that "[t]o be considered for continued occupancy upon conveyance to HUD, you must submit a written request to HUD **within 20 days of the date at the top of this letter or the property must be vacated before the time HUD is scheduled to acquire it.**"

12. S&B's claims in the Notice created the false impression that Plaintiff would have to vacate the Property within 60 to 90 days from March 21, 2017. This representation was false because S&B did not expect for title to be transferred to HUD within 60 to 90 days. Further, S&B's representation was false because title could not legally be transferred to HUD within 60 to 90 days.

13. While S&B intended to schedule a foreclosure sale within the next 60 to 90 days, the ownership or title to the Property would not occur until months after the foreclosure sale *if* Bank of America purchased the Property at the foreclosure sale. Being that the Property had a substantial amount of equity, it was nearly guaranteed that a third party would have purchased the Property at foreclosure auction and highly unlikely that BOA would have purchased the Property at foreclosure

sale. If BOA did not purchase the Property at foreclosure auction, then the title would not have been transferred to HUD and therefore, S&B's threat that the Property must be vacated <u>before</u> HUD acquired it was deceptive and false.

14. Upon information and belief, BOA instructed S&B to send the Notice in May 2017.

15. Upon information and belief, S&B was acting within its scope of agency with BOA, when S&B sent the Notice to Plaintiff.

16. HUD instructs that this Notice be sent out "[a]t least 60 days, but not more than 90 days, before the date on which the mortgagee reasonably expects to acquire title to the property." However, Defendants S&B and BOA did not expect to acquire title within 60 to 90 days of March 21, 2017. Rather, they expected to conduct a foreclosure sale within 60 to 90 days of March 21, 2017. Unless the Defendants expected to conduct a sham sale where the Defendants colluded with each other to guarantee that BOA was the winner bid at the foreclosure auction sale, in March 21, 2017, the Defendants did not know if BOA would obtain the winning bid at the foreclosure sale.

17. Furthermore, even if BOA was the winning bidder at the foreclosure sale, the title to the Property would not immediately transfer over to BOA. Instead a series of events would occur over a period of 3 to 4 months *or more* before the title would transfer to BOA. For instance, following a foreclosure sale, the Plaintiff would have at least 30 days to file objections to the sale, and regardless of whether Plaintiff filed objections, the circuit court would have to ratify the foreclosure sale. After the circuit court ratified the foreclosure sale, the foreclosure file would be sent to auditing division of the circuit court for approval. Once the circuit court enters an Order ratifying the auditor's report, only then can S&B can execute a substitute deed that transfers title to BOA.

18. Defendant S&B has never transferred title to BOA or any other servicer or lender within 60 to 90 days of foreclosure sale, much less within 60 to 90 days of noticing a mortgagor or a foreclosure sale.

19. Defendants should have sent the Notice sometime after the Defendants purchased the Property at the foreclosure sale. Based on the timing that Defendants' were acquiring title to properties via foreclosure, the Defendants should have sent the Notice after the circuit court ratified the foreclosure sale.

20. As a result of Defendants' misrepresentation that the title to the Property would be transferred to BOA before the title was expected to be transferred, or could indeed actually be transferred to BOA, Defendants created a false sense of urgency that Plaintiff would have to vacate the Property months before she would have to.

21. Defendant BOA has falsely reported to the credit reporting agencies that Plaintiff was in default to BOA and that her loan was subject to valid foreclosure action. Additionally, Plaintiff disputed that the loan was *currently 120 days delinquent* because the account had been closed and that Plaintiff's payment on November 30, 2015 was credited.

22. BOA received notice of Plaintiff's credit dispute from all three credit reporting agencies. BOA did not correct the errors that were disputed by Plaintiff because BOA did not conduct a reasonable investigation of Plaintiff's credit dispute. Further, Plaintiff failed to instruct the credit reporting agencies to report the debt as disputed.

23. In April 2017, Plaintiff retained an attorney to represent her in the foreclosure action and in a lawsuit against Carrington Mortgage Services, who Defendants claim is the current servicer of the Plaintiff's loan.

24. Plaintiff's attorney entered an appearance in the foreclosure action and lawsuit against Carrington Mortgage Services on April 28, 2017 and February 16, 2018, respectively. Defendant S&B became aware of Plaintiff's representation by counsel on April 28, 2017 and February 16, 2018 because S&B is the plaintiff in the foreclosure action and S&B represents Carrington Mortgage Services in the lawsuit against Carrington Mortgage Services.

25. Despite being aware that Plaintiff is represented by counsel, Defendant S&B has sent debt collection communications (i.e. foreclosure filings, payoff statements, etc.) directly to Plaintiff.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action individually and on behalf of all persons similarly situated pursuant to Maryland Rule 2-231, and seeks to represent the following defined classes:

**Bank of America Class**

All Maryland residents within three years of filing this complaint (a) who had a mortgage loan (b) that was serviced, owned or otherwise held by Bank of America (c) that was the subject of a foreclosure filing (d) where the Bank of America appointed a substitute trustee or retained a law firm (e) that sent correspondence threatening to obtain title of the residents' property (f) before it could obtain title of the residents' property.

**Shapiro & Brown Class**

All Maryland residents within three years of filing this complaint (a) who had a mortgage loan (b) that was the subject of a foreclosure filing, (c) where BOA appointed Shapiro & Brown (d) who sent correspondence threatening to obtain title of the residents' property (e) before it could obtain title of the residents' property.

27. The classes are so numerous that it is impracticable to join all members of the classes to this action. The names and addresses of the members of the classes are identifiable through documents maintained by the Defendants, and the members of the classes may be notified of the pendency of this action by published and/or mailed notice.

28. There are common questions of law and fact relating to the proposed classes, which include the following:

    a) Whether the mortgage loan was a consumer debt as defined by MCDCA; and

    b) Whether Defendants claimed a right or threatened to obtain title to the properties during a time period that Defendants knew, or should have known, they could not obtain title to the properties.

29. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same causes of action.

30. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff. Ms. Cooke is an adequate representative of the class because her interests coincide with interests of the members of the classes that she seeks to represent. She has retained competent and experienced counsel in consumer litigation. Neither Plaintiff nor her attorney have interests which might cause them not to vigorously pursue this claim.

31. Questions of law and fact common to the members of the classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes to individually and effectively redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

## **COUNT ONE: VIOLATION(S) OF FDCPA**
**(as to Defendant S&B only)**

32. Plaintiff incorporates the preceding allegations by reference.

33. Within one-year of filing this action, Defendant S&B violated 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiff when Defendant knew she was represented by counsel.

34. As a result of Defendant's illegal communications with Plaintiff, she suffered actual damages, including mental and emotional distress.

35. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages to Plaintiff in an amount to be determined by the court pursuant to §1692k(a)(1), liable for statutory damages to Plaintiff in an amount of $100 - $1,000 pursuant to §1692k(a)(2)(A), and reasonable attorney's fees pursuant to §1692k(a)(3).

### COUNT TWO: VIOLATION(S) OF MCDCA
### (CLASS CLAIM)
### (as to all Defendants)

36. Plaintiff incorporates the preceding allegations by reference.

37. Defendants violated Md Code Ann., Com. Law § 14-202(8) by claiming it could or threatening to obtain title to the property and evict the Plaintiff and the putative members of the Classes during a time period that Defendants knew they had no right to obtain title to the properties.

38. Defendants' violations caused the Plaintiff to endure damages including out-of-pocket costs and fear or worry of being kicked out of the Property, rendering Defendant liable for actual damages in an amount to be determined pursuant to MCDCA, §14-203.

### COUNT THREE: VIOLATION(S) OF MCPA
### (CLASS CLAIM)
### (as to all Defendants)

39. Plaintiff incorporates the preceding allegations by reference.

40. Defendants violated the Md. Code Ann., Com Law §13-301(13)(iii) when the Defendants violated the MCDCA at §§ 14-202(8).

41. Defendants foregoing MCPA violation caused the Plaintiff to endure damages including out-of-pocket costs and fear and worry of being kicked out of the Property.

42. Defendants conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in amount to be determined pursuant to the MCPA at §13-408(a), and for attorney's fees pursuant to MCPA, §13-408(b).

8

## COUNT FOUR: VIOLATIONS OF FCRA
### (as to Defendant BOA)

43. Plaintiff incorporates the preceding allegations by reference.

44. Defendant BOA reported inaccurate information regarding the debt to the credit reporting agencies (CRAs). Specifically, BOA inaccurately reported the debt as Current when it was closed and transferred, ~~[redacted]~~ and inaccurately or misleadingly reported the debt as 120+ days delinquent when BOA did not hold the Note during the timer period of October 2014 to May 2015 and therefore, did not have the right to enforce or collect under the Note.

45. Within two years of filing this action, the Plaintiff sent letters to the CRAs to dispute the BOA debt wherein Plaintiff disputed the payment history, the status of the account and BOA's legal authority to hold Plaintiff responsible on the debt.

46. According to the CRAs, the disputes were forwarded to BOA and confirmed as accurate by BOA.

47. BOA confirmed the disputed information as accurate without conducting a reasonable investigation and conclusively verifying the accuracy of the disputed information.

48. Instead of conducting a reasonable investigation of Plaintiff's dispute, BOA simply verified the information appearing on BOA's computer screen for credit reporting matched the information that was being reported to Plaintiff's credit report.

49. A reasonable investigation would have entailed BOA reviewing the underlying documentation to verify the information on BOA's computer screen for credit reporting was accurate. However, BOA merely confirmed that the information on its credit reporting computer screen was reported to the CRAs and took *no* steps to verify the reported information was accurate.

50. Although Plaintiff disputed the debt and continued to dispute the debt, BOA omitted that Plaintiff disputed the debt when BOA conveyed its investigation results to the CRAs.

9

51. Accordingly, Defendant BOA violated 15 U.S.C. § 1681s-2(b)(1) by failing to investigate the subject matter of Plaintiff's dispute and by falsely asserting to the credit reporting agencies that it had verified and confirmed the accuracy of the disputed information.

52. Additionally, Defendant BOA violated 15 U.S.C. § 1681s-2(b)(1) by failing to instruct the credit reporting agencies to report the debt as disputed.

53. Defendant BOA's failure to comply with its obligations under 15 U.S.C. § 1681s-2(b)(1) to investigate the merits of Plaintiff's dispute were the result of Defendant's deliberate policy to restrict its investigation of consumers' dispute to merely confirming the information was reported accurately from its computer screen instead of investigating whether the information on its computer screen is accurate.

54. Defendant BOA's failure to comply with its obligation under 15 U.S.C. § 1681s-2(b)(1) to report a disputed debt as disputed was the result of Defendant's deliberate policy to never report a debt as disputed.

55. As a result of Defendant BOA's violations of 15 U.S.C. §1681s-2(b)(1), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to credit profile and reputation, embarrassment, humiliation and other mental and emotional distress.

56. Defendant BOA's violations were deliberate and intentional, which gives rise to a willful violation, rendering Defendant liable pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

57. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant BOA in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Classes request the following relief:

A.  an order granting certification of the proposed class, including the designation of Plaintiff as the named representatives, the appointment of the undersigned as Class Counsel, under the applicable provisions of Fed. R. Civ. P. 23;

B.  a finding that Defendants violated MCDCA, Md. Code Ann., Com. Law § 14-202(8);

C.  a finding that Defendant BOA violated FCRA, 15 U.S.C. § 1681s-2(b)(1);

D.  a finding that Defendant S&B violated FDCPA, 15 U.S.C. § 1692c(a)(2);

E.  an award of statutory damages in the amount of $1,000 against S&B for Count I;

F.  an award of actual damages against S&B for Count I;

G.  an award of actual damages to Plaintiff against BOA and S&B for Counts II & III;

H.  an award of such amount as the Court may allow for all other class members for Counts II & III,

I.  an award of costs of this action, together with reasonable attorneys' fees as determined by this Court; and

J.  an award of such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

58.  Pursuant to Md. Rule 2-511, Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted,

**GLORIA COOKE**

*/s/ Quinn B. Lobato*
Quinn B. Lobato
210 Grisdale Hill
Riva, MD 21140
Tel: (240) 305-4770
quinn.lobato@gmail.com
*Attorney for Plaintiff*

11